UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| STATE OF HAWAII, DEPARTMENT OF HUMAN SERVICES, DIVISION OF VOCATIONAL REHABILITATION, HOOPONO-SERVICES FOR THE BLIND,<br><br>        Plaintiff,<br><br>   vs.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, REHABILITATION SERVICES ADMINISTRATION,<br><br>        Defendant. | CIV. NO. 17-00430 LEK-RT |

**ORDER: GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPEAL; AFFIRMING IN PART AND REVERSING IN PART THE ARBITRATION PANEL'S JULY 24, 2017 DECISION; AND REMANDING THE CASE TO THE ARBITRATION PANEL**

On August 28, 2017, Plaintiff State of Hawai`i, Department of Human Services, Division of Vocational Rehabilitation, Ho`opono - Services for the Blind ("Ho`opono"), filed the instant appeal of a July 24, 2017 Arbitration Decision ("Appeal" and "Decision"). [Plaintiff's Complaint and Appeal Brief ("Complaint"), filed 8/28/17 (dkt. no. 1).] Ho`opono filed its Opening Brief; Motion for Judgment on the Administrative Record and Motion to Vacate Arbitration Decision ("Opening Brief") on January 14, 2021. [Dkt. no. 101.] Defendant United States Department of Education, Rehabilitation Services Administration ("Defendant") filed its Answering Brief

on February 24, 2021, and Ho`opono filed its Reply Brief in Support of Motion for Judgment on the Administrative Record and Motion to Vacate Arbitration Decision ("Reply Brief") on March 19, 2021.  [Dkt. nos. 104, 105.]  The Court finds the Appeal suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules").  For the reasons set forth below, Hoopono's Appeal is granted in part and denied in part, and the arbitration panel's Decision is affirmed in part and vacated in part.  The case is remanded to the arbitration panel to issue a decision consistent with this Order.

<u>BACKGROUND</u>

Ho`opono brings this Appeal pursuant to the Randolph-Sheppard Act, 20 U.S.C. § 107, *et seq.* ("the Act" or "RSA"). [Complaint at pg. 1.]  The RSA "establishes a cooperative program between the federal government and the states to assist blind persons who wish to operate vending facilities on federal property."  <u>Sauer v. U.S. Dep't of Educ.</u>, 668 F.3d 644, 645 (9th Cir. 2012) (citing 20 U.S.C. § 107).  Defendant administers the RSA with the help of agencies, designated by the Secretary of Education ("the Secretary"), in the states that choose to participate in the RSA program ("state licensing agencies" or "SLAs").  <u>Id.</u> at 645-46 (citing 20 U.S.C. §§ 107(b), 107a(a),

2

107b).  An SLA "issue[s] licenses to blind persons that make them eligible to operate vending facilities on federal properties within that state."  Id. (citing § 107a(b)). Section 107(b) states, *inter alia*: "Any limitation on the . . . operation of a vending facility based on a finding that such . . . operation would adversely affect the interests of the United States shall be fully justified in writing to the Secretary, who shall determine whether such limitation is justified."

## I.   Relevant Facts

The relevant facts in this case are largely undisputed.  Ho`opono is the SLA for the State of Hawai`i. [Administrative Record ("AR"), filed 9/6/18 (dkt. no. 69), at CAR001129 (Decision at 2).[1]]  From 2005 to 2016, the United States Department of the Army ("Army") had a contract, which was extended a number of times, with Ho`opono (collectively, "the Contract") to perform the full operation of four cafeteria/dining facilities at the Schofield Barracks and Wheeler Army Airfield (collectively, "Schofield").  The Contract required the performance of both Full Food Service ("FFS")

---

[1] The AR is docket numbers 61 through 70, all of which were filed on September 6, 2018.  The Decision is also available as part of Exhibit A to the Complaint.  [Dkt. no. 1-1 at PageID #: 22-75.]

3

duties and Dining Facility Attendant ("DFA") duties.  James
Theodore Chinn, Jr. ("Chinn") was the licensed blind vendor who
Ho`opono assigned to the contract.  [Id. at CAR001129-30
(Decision at 2-3); Order Denying Plaintiff's Second Motion for
Temporary Restraining Order, filed 10/20/17 (dkt. no. 27)
("10/20/17 Order"), at 2-3.[2]]

        During the period of the Contract, FFS and DFA duties
were required for the Schofield facilities because the Army
service members who ordinary would perform the FFS duties were
often stationed overseas.  After the major combat operations in
Iraq and Afghanistan ended, the service members were available
at their home station on a more reliable basis.  Because Army
cooks were available, the Army no longer needed a contractor to
perform FFS services.  The Army still required DFA services,
including janitorial duties, because Army Regulations prohibit
Army cooks from performing those duties.  Thus, when the Army
sought bids for the Schofield dining facilities contract
covering the years 2016 to 2022 ("2016-22 Contract"), the
contract was limited to DFA services only.  [AR (dkt. no. 69) at
CAR001130 (Decision at 3).]

        Ho`opono points out that the Army initially indicated
that, in spite of the reduction in the services called for, the

---

        [2] The 10/20/17 Order is also available at 2017 WL 6997137.

Army intended to apply the RSA's priority in the 2016-22
Contract solicitation process.  [AR (dkt. no. 62-4) at CAR000139
(letter dated 12/22/15 to Ho`opono from Sandra E. Kim,
Contracting Officer/Chief, Army Contract Operations Division
("12/22/15 Letter")).]   The Army stated:

> The Government intends to solicit and compete the
> follow-on contract as a 100% Small Business set-
> aside notifying potential offerors of the
> Randolph Sheppard "priority".  This "priority"
> will result in award to your organization unless
> your organization's offer exceeds the low offeror
> by more than five percent of that offer or one
> million dollars, whichever is less.

[Id.]  On February 2, 2016, Solicitation No. W912CN-16-R-0005
was issued, seeking bids for the 2016-22 Contract ("2016-22
Solicitation"), and it provided for the RSA's priority.  [AR
(dkt. no. 69) at CAR001130 & n.4 (Decision at 3 & n.4).]   The
services to be provided under the 2016-22 Contract

> include[d], but [we]re not limited to, the
> following: cleaning dining facilities, cleaning
> restrooms, included in these duties are sweeping,
> mopping, scrubbing, trash removal, dishwashing,
> waxing, stripping, buffing, window washing,
> equipment and utensils and other sanitation
> related functions in the dining facilities listed
> within the [Performance Work Statement ("PWS")],
> and may be required before, during, and after
> normal dining facility operating hours.

[AR (dkt. no. 66-13) at CAR000901 (PWS for the 2016-22
Solicitation), § 2.1.2.]

The RSA's priority was removed in an amendment to the
2016-22 Solicitation ("Amendment 4"), which was issued pursuant

5

to a directive from the Army Contracting Command, based on Army policy interpreting the RSA as inapplicable to DFA contracts. After Amendment 4, the contracting method for the 2016-22 Solicitation became solely a 100% small business set-aside, which rendered Ho`opono ineligible to bid because it is not a small business.  [AR (dkt. no. 69) at CAR001130 & n.4 (Decision at 3 & n.4).]  The Army neither notified, consulted with, nor sought permission from the United States Department of Education before it issued Amendment 4 and removed the RSA's priority from the 2016-22 Solicitation process.  [AR (dkt. no. 62-2) at CAR000136 (Stipulation of Fact, dated 2/9/17).]  Ho`opono objected to the removal of the RSA's priority, and the parties agreed to arbitrate the issue.  [AR (dkt. no. 69-1) at CAR001130 (Decision at 3).]

## II.  <u>Arbitration</u>

An arbitration hearing was held on February 9, 2017, at Hoopono's office in Honolulu.  [AR (dkt. no. 61-10) (Transcript of Proceedings ("Arb. Trans.")).]  The respondent at the arbitration was the United States Department of the Army, Schofield Barracks, and Major Michael Pond appeared on its behalf.  [<u>Id.</u> at CAR 000024-25 (Arb. Trans. at 1-2).]  Ho`opono called two witnesses - Chinn and Lea Dias, Hoopono's Branch Administrator.  [<u>Id.</u> at CAR000036-84 (Arb. Trans. at 13-61).] Major Pond did not present any witnesses, but the arbitration

6

panel asked him whether he knew why the RSA's priority was removed from the 2016-22 Solicitation.  [Id. at CAR000085 (Arb. Trans. at 62).]  He stated:

> My understanding is that initially, when a contracting office is planning an acquisition, they have any number of policies and provisions of the Federal Acquisition Regulation and the Defense supplements, and the Army supplements. They kind of do a check to ensure that the -- the acquisition is going to be aligned with those various authorities.

[Id. at CAR000086 (Arb. Trans. at 63).]  Major Pond explained that: the Hawai`i contracting office initially determined that the RSA's priority would be extended to Hoopono's blind vendor who was operating the facilities at the time; Ms. Kim therefore issued the 12/22/15 Letter to Ho`opono; and, after higher officials consulted with Army headquarters, it was determined that the priority did not apply because the 2016-22 Contract was limited to DFA duties.  [Id. at CAR000086-88 (Arb. Trans. at 63-65).]  Major Pond stated:

> It's just a question of do we need it or not.  And that's based on things like you know, the end of major combat operations in Iraq and Afghanistan, and we are kind of looking forward at next years, and there's a sense, and I think this is generally Army, why they sense that, we are confident that large formations are not going to be deployed the way they were from 2005 to '15 in the next five years.
>
> CHAIRMAN BROWN:  So basically a downsizing.
>
> MAJ. POND:  Yes, a significant downsizing. I mean from the contractor, again, operating the

facility, preparing the meals, serving the meals,
cooking the food, doing everything basically, to
Army cooks taking over those positions, and then
the contractor, the DFA or Dining Facility
Attendant contractor is washing the dishes,
sweeping the floors, and taking out the trash.

        . . . .

    CHAIRMAN BROWN:  So is the Army able to make
that decision in and of itself or do they under
the federal law have to check with the Department
of Education?

    MAJ. POND:  The Army is allowed to define
its requirement in the sense that if we decided
that we don't want full food services, there
really is no way for a vendor to say, yes, you
do.

    CHAIRMAN BROWN:  But, do you have to bump
that against the --

    MAJ. POND: But, there is -- I would say that
it's true that there is a procedural, a legal
requirement to consult prior to removing that
priority.  And for reasons that I do not know,
that apparently was not -- not apparently -- was
not -- was not followed in this case.

    I would -- and it's just speculating, but I
don't -- I don't think there was anything.

[Id. at CAR000088-90 (Arb. Trans. at 65-67).]

        Major Pond argued that Hoopono's position that the RSA

applied to the solicitation and award of the 2016-22 Contract

was an attempt to improperly extend the scope of the RSA.  He

argued the RSA does not apply when the contractor is to perform

"ancillary services which pertain to the operation of a dining

facility" because adopting such a position would extend the RSA

to virtually any work performed at a dining facility, including replacing a light bulb, painting the walls, or repairing the air conditioning system.  [Id. at CAR000093-94 (Arb. Trans. at 70-71).]

      In the Decision, the arbitration panel identified the following issues presented in the case:

> Is the [Army] placing a limitation on the operation of a vending facility by pulling back its cafeteria service to an in-house operation, changing its full service FFS contract requirements to a DFA contract?
>
> . . . .
>
> Whether DFA services are "pertaining to the operation"[3] of cafeterias on a federal facility?

[AR (dkt. no. 69-1) at CAR001138-39 (Decision at 11-12).]  As to the first issue, the panel stated:

> The Arbitration Panel notes that under the 2007 JWA no-poaching provision, a "prime contract for operation of a military dining facility" (left for RSA) is distinguished from one that is

---

[3] For example, the RSA regulations state:

> All contracts or other existing arrangements **pertaining to the operation** of cafeterias on Federal property not covered by contract with, or by permits issued to, State licensing agencies shall be renegotiated subsequent to the effective date of this part on or before the expiration of such contracts or other arrangements pursuant to the provisions of this section.

34 C.F.R. § 395.33(c) (emphasis added).

> "supporting the operation" (left for JWOD).[4]
> JWA reflected the 2006 nonbinding Joint Report
> which had distinguished the FFS and DFA
> contracts.  While there is some logic to think
> that the Army returning to an in-house status is
> a change producing a limitation, such a
> conclusion without clearer legislative guidance
> would seem to too heavily impact the Army's
> ability to operate.  Therefore, the Panel is
> disinclined to accept the argument and does not
> find RSA section 107(b)(2) violated.

[Id. at CAR001138 (Decision at 11).]

> The JWOD is a more general procurement
> statute and counterpart statute to the RSA.  The
> JWOD is intended "to increase employment and
> training opportunities for persons who are blind
> **or** have other severe disabilities through the
> purchase of commodities and services from
> qualified nonprofit agencies employing [such]
> persons."  41 C.F.R. § 51-1.1(a) (emphasis
> supplied).  Like the RSA, the JWOD is applicable
> to dining facility contracts for military mess
> halls.  See [NISH v.] Cohen, 247 F.3d [197,] 205
> [(4th Cir. 2001)].  But, unlike the RSA, which
> "deals explicitly with . . . the operation of
> cafeterias," the JWOD is a "general procurement
> statute."  Id.

Kan. ex rel. Kan. Dep't for Child. & Fams. v. SourceAmerica, 826

F. App'x 272, 275 (4th Cir. 2020) (emphasis and some alterations

in SourceAmerica) (footnote omitted).

> [I]n 2006, Congress enacted the "no poaching"
> provision in § 856 of the [JWA].  Pub. L.

---

[4] In the Decision, "JWA" refers to section 856 of the John
Warner Defense Authorization Act for Fiscal Year 2007, Pub.
L. 109-364, 120 Stat. 2347 (2006), and "JWOD" refers to the
Javits-Wagner-O Day Act (later known as AbilityOne), ch. 697, 52
Stat. 1196 (1938) (currently codified, as amended, at 41 U.S.C.
§§ 8501 to 8506).  See AR at CAR001132 & n.13, CAR001134
(Decision at 5 & n.13, 7 & n.24).

No. 109-364, § 856, 120 Stat. 2083 (2006).
Congress explained that the contracts covered
under the "no poaching" provision include "a food
service contract . . . for full food services,
mess attendant services, or services supporting
the operation of all or any part of a military
dining facility . . . that was awarded under
either the [RSA] or the [JWOD]."  Id. . . .

Kan. ex rel. Kan. Dep't for Child. & Fams. v. SourceAmerica, 874

F.3d 1226, 1234 (10th Cir. 2017) (some alterations in

SourceAmerica).  The JWA stated: the RSA "does not apply to full

food services, mess attendant services, or services supporting

the operation of a military dining facility that, as of the date

of the enactment of this Act, were services on the procurement

list established under section 2 of the" JWOD; and the JWOD

"does not apply at the prime contract level to any contract

entered into by the Department of Defense as of the date of the

enactment of th[e JWA] with a State licensing agency under the

[RSA] for the operation of a military dining facility."  JWA,

Pub. L. No. 109-364, § 856(a)(1)-(2).  The arbitration panel

described the JWA as "a temporary freeze on contract competition

between extant RSA/JWOD contractors for cafeteria

services. . . . for contracts extant as of the day of the

passage of the law."  [AR (dkt. no. 69) at CAR001135 (Decision

at 8).]  Hoopono's position was that, under the JWA, "JWOD only

applies in two instances: to contracts poached before

October 17, 2006 and to subcontracts."  [Id. at CAR001135 n.25

11

(Decision at 8 n.25).]   Thus, Ho`opono argued that, because the Contract was a prime contract that was in existence when the JWA was enacted, the no-poaching provision prevented the application of the JWOD to the 2016-22 Solicitation because the 2016-22 Contract was a follow-on contract to the Army's original Contract with Ho`opono.   The arbitration panel disagreed.

As to the second issue, whether DFA services pertain to the operation of a federal cafeteria facility, the arbitration panel acknowledged that FFS contracts with blind vendors under the RSA included DFA functions, including janitorial services, but "[t]here always seemed to be a primary food component[.]"   [Id. at CAR001139 (Decision at 12).]   However, in light of the JWOD and JWA, the arbitration panel interpreted DFA functions as "related" but "separable" under the RSA.   [Id.]   Thus, the panel ruled that, "[i]f the prime contract is for FFS, the blind vendor has the priority under RSA even as the FFS single contract includes DFA duties.   If it is a single contract for DFA, other non-profits are authorized to bid."[5]   [Id.]   As to Hoopono's argument based on the JWA no-

_____

[5] The arbitration panel noted that, while blind vendors arguably could bid for DFA contracts, they may soon be ineligible to do so, based on the evolving the law and policies in this area.   [AR (dkt. no. 69-1) at CAR001139 (Decision at 12).]   However, this observation is not relevant to the instant Appeal because it is undisputed that Ho`opono was not eligible to bid on the 2016-22 Contract after Amendment 4 to the 2016-22 Solicitation.

poaching provision, the arbitration panel ruled that the provision did not preclude the Army from **choosing to apply** the RSA's priority to the 2016-22 Solicitation, but the panel also ruled that provision did not clearly **require** the Army to do so. [Id.]  The panel therefore ruled that Ho`opono did not present substantial evidence showing that the Army violated the RSA by failing to apply the RSA's priority in the solicitation process for the 2016-22 Contract.  [Id. at CAR001139-40 (Decision at 12-13).]

### III. **The Instant Appeal**

On October 21, 2019, Ho`opono filed a motion asking this Court to stay the Appeal, pending the outcome of: Kansas ex rel. Kansas Department for Children & Families v. SourceAmerica, No. 19-1452, which was pending before the Fourth Circuit; and Texas Workforce Commission v. United States Department of Education, No. 19-50283, which was pending before the Fifth Circuit.  [Dkt. no. 83.]  The motion to stay was granted, and the case was administratively closed.  [Minute Order - EO: Court Order Staying and Administratively Closing Case, filed 1/3/20 (dkt. no. 88).]  Following decisions by the Fourth Circuit and the Fifth Circuit, the stay was lifted, and Hoopono's Appeal proceeded on the merits.  [Minute Order - EO: Court Order: Vacating Status Conference Scheduled for November 13, 2020;

Lifting Stay; and Issuing Deadlines, filed 11/12/20 (dkt. no. 96).]

Ho`opono argues the arbitration panel's Decision was "arbitrary, capricious, an abuse of discretion, otherwise contrary to law, and not supported by substantial evidence." [Opening Brief at 1.]  Ho`opono first argues the RSA applies to DFA service contracts at Schofield.  Further, even if the RSA does not apply to DFA service contracts in general, the reduction in the scope of the Schofield contract from FFS to DFA eliminated an existing RSA opportunity.  This required the approval of the Secretary of Education, but the Army did not obtain the Secretary's approval before eliminating the RSA opportunity.

## STANDARD

"An arbitral award under the Randolph–Sheppard Act is reviewed as an agency action under the standards set forth in the Administrative Procedure Act ('APA'), 5 U.S.C. § 706." Premo v. Martin, 119 F.3d 764, 768 (9th Cir. 1997) (citing 20 U.S.C. § 107d–2).  This Court must set aside the arbitration panel's Decision if this Court finds that the Decision is

> (A)  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B)  contrary to constitutional right, power, privilege, or immunity;

14

> (C)  in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D)  without observance of procedure required by law;
>
> (E)  unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>
> (F)  unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

See § 706(2).  In reviewing the Decision, this Court must "review the whole record or those parts of it cited by a party[.]"  See § 706.

Hoopono's Appeal focuses upon § 706(2)(A).  This district court has stated:

> "This standard of review is 'highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision.'"  Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric., 499 F.3d 1108, 1115 (9th Cir. 2007) (citation omitted).  A court may not substitute the agency's judgment with its own.  See Earth Island [Inst. v. Carlton], 626 F.3d [462,] 468 [(9th Cir. 2010)].  Instead,
>
> > a decision may only be reversed as arbitrary and capricious "if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

Id. at 468-69 (citation omitted). . . .

Hsiao v. Stewart, Civil No. 18-00502 JAO-KJM, 2021 WL 1113641, at *8 (D. Hawai`i Mar. 23, 2021).

## DISCUSSION

## I.   Whether the RSA Applies to DFA Service Contracts

Blind persons who have been licensed pursuant to the RSA are "authorized to operate vending facilities on any Federal property," 20 U.S.C. § 107(a), and they are given priority in the operation of such facilities, § 107(b).  For purposes of the RSA,

> "vending facility" means automatic vending machines, cafeterias, snack bars, cart services, shelters, counters, and such other appropriate auxiliary equipment as the Secretary may by regulation prescribe as being necessary for the sale of the articles or services described in section 107a(a)(5) of this title and which may be operated by blind licensees[.]

20 U.S.C. § 107e(7); see also 34 C.F.R. § 395.1(d) (defining what constitutes a cafeteria for purposes of the RSA).  It is undisputed that the Schofield cafeteria/dining facilities where the DFA services were to be provided under the 2016-22 Contract are vending facilities for purposes of the RSA.  Thus, the Court must determine whether the provision of the DFA services described in the 2016-22 Solicitation constitutes the operation of a vending facility.

Neither the RSA statutes nor their implementing regulations contain an express definition of the operation of a vending facility.  See 20 U.S.C. § 107e; 34 C.F.R. § 395.1; see also, generally, 20 U.S.C. §§ 107 to 107f; 34 C.F.R. §§ 395.1 to 395.38.  After the arbitration panel issued its Decision, the Secretary issued a letter, dated March 5, 2018, addressed to United States Representative Pete Sessions ("Opinion Letter").  [Opening Brief, Exh. A.[6]]  The Opinion Letter followed an October 17, 2017 discussion between the Secretary and Representative Sessions about the RSA.  [Id. at PageID #: 3738.] In the letter, the Secretary stated:

> There has been some dispute over the types of contracts to which the [Randolph-Sheppard Act] priority applies.  Defense Department regulations distinguish between "full food service" and "dining facility attendant" contracts.  Under "full food service" contracts, the vendor manages the entire operation of the cafeteria, including food preparation.  Under "dining facility attendant" contracts, the vendor manages those aspects of the cafeteria besides food preparation because military personnel prepare the food.
>
> The Education Department believes that the Randolph-Sheppard Act priority applies to both types of cafeteria contracts.  The term "operation" in the Act means that the vendor must "manage" or "direct the working of' [sic] the cafeteria.  Oxford English Dictionary (2d ed. 1989).  Nothing in the Randolph-Sheppard Act

---

[6] The Secretary's Opinion Letter is also available on the Department of Education, Rehabilitation Service Administration's website, https://rsa.ed.gov/about/programs/randolph-sheppard-vending-facility-program/resources (last visited May 24, 2021).

requires a vendor to participate in every
activity of the cafeteria in order to "manage" or
"direct the working of' [sic] the cafeteria.
Where a vendor is responsible for all the
functions of the cafeteria aside from those
performed by military personnel--such as
supervisory, administrative, and sanitation-
related functions--the vendor can be said to
"manage" the cafeteria, even if the vendor is not
preparing the food.  Indeed, the cafeteria would
not be able to operate without the vendor
performing those functions.

Some contracts may be limited to discrete tasks
so as not to entail overall "operation" of the
cafeteria, but that characterization would not
apply to all "dining facility attendant"
contracts.

[Id.]

Courts have differed in their treatment of the Opinion

Letter.  The district court order that the Fourth Circuit

reviewed in SourceAmerica gave the Opinion Letter no weight.

[T]he district court declined to give the
Secretary's Opinion Letter any deference or
consideration, based on the fact that the DOE
itself disavowed the Opinion Letter as either its
general position or its litigation position on
the proper interpretation of RSA with respect to
the Fort Riley DFA contract.  The district court
further explained "[Kansas] cannot credibly argue
that a letter written by the Secretary [of DOE]
to a congressman constitutes an agency
interpretation promulgated in the exercise of the
authority to make rules carrying the force of
law."

SourceAmerica, 826 F. App'x at 281 (4th Cir. 2020) (some

alterations in SourceAmerica).  In the instant Appeal, while not

expressly disavowing the opinions in the Opinion Letter,

18

Defendant argues the Opinion Letter is not a binding agency interpretation, and therefore the letter is not entitled to deference under <u>Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984).[7]  [Answering Brief at 23-24.]  The Fifth Circuit has stated: "Although the Secretary's letter does

---

[7] The Ninth Circuit has stated:

> We review the validity of an agency's regulatory interpretation of a statute under the two-step framework set forth in <u>Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.</u>, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). The first step is to ask, "has [Congress] directly spoken to the precise question at issue." <u>Id.</u> at 842, 104 S. Ct. 2778. If Congress's intent is clear, then that is the end of our inquiry. <u>Id.</u> at 842-43, 104 S. Ct. 2778. If, however, "the statute is silent or ambiguous with respect to the specific issue," we proceed to step two and ask if the agency's action is "based on a permissible construction of the statute." <u>Id.</u> at 843, 104 S. Ct. 2778. Even if we believe the agency's construction is not the best construction, it is entitled to "controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." <u>Id.</u> at 844, 104 S. Ct. 2778.

<u>Or. Rest. & Lodging Ass'n v. Perez</u>, 816 F.3d 1080, 1086 (9th Cir. 2016) (alterations in <u>Or. Rest.</u>) (footnote and some citations omitted). However, as a preliminary matter - "<u>Chevron</u> step zero" - it must be determined whether the <u>Chevron</u> analysis applies. <u>Id.</u> at 1086 n.3. "An 'administrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.'" <u>Id.</u> (quoting <u>United States v. Mead Corp.</u>, 533 U.S. 218, 226-27, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001)).

not carry the force of law, we find it presents a 'reasonable
interpretation' of the Act, such that it is persuasive and is
therefore 'entitled to respect.'"  Texas Workforce Comm'n v.
United States Dep't of Educ., 973 F.3d 383, 390 (5th Cir. 2020)
(quoting Christensen v. Harris Cnty., 529 U.S. 576, 587, 120 S.
Ct. 1655, 146 L. Ed. 2d 621 (2000)).

        In Christensen, the United States Supreme Court
stated,

        an interpretation contained in an opinion letter[
        is] not . . . arrived at after, for example, a
        formal adjudication or notice-and-comment
        rulemaking.  Interpretations such as those in
        opinion letters — like interpretations contained
        in policy statements, agency manuals, and
        enforcement guidelines, all of which lack the
        force of law — do not warrant Chevron-style
        deference.  See, e.g., Reno v. Koray, 515 U.S.
        50, 61 (1995) (internal agency guideline, which
        is not "subject to the rigors of the
        Administrative Procedur[e] Act, including public
        notice and comment," entitled only to "some
        deference" (internal quotation marks omitted)).
        Instead, interpretations contained in formats
        such as opinion letters are "entitled to respect"
        under our decision in Skidmore v. Swift & Co.,
        323 U.S. 134, 140 (1944), but only to the extent
        that those interpretations have the "power to
        persuade," ibid.  See [EEOC v.] Arabian American
        Oil Co., [499 U.S. 244,] 256–258 [(1991)].[8]

Christensen, 529 U.S. at 587 (some alterations in Christensen)
(some citations omitted).  In Arabian American Oil, the Supreme

_____

        [8] Arabian American Oil was superseded on other grounds by
the Civil Rights Act of 1991.  See, e.g., Est. of Reynolds v.
Martin, 985 F.2d 470, 474 (9th Cir. 1993); Stender v. Lucky
Stores, Inc., 780 F. Supp. 1302, 1304 (N.D. Cal. 1992).

Court recognized the following facts as giving EEOC guidelines the "power to persuade, if lacking power to control[,]" "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements."  499 U.S. at 257 (citation and quotation marks omitted).

The Secretary's Opinion Letter is not entitled to Chevron deference because it did not result from a formal publication and comment process.  This Court also concludes that the Opinion Letter is not entitled to the "respect" described in Christensen because it does not have the type of "power to persuade" described in Arabian American Oil.  While the reasoning in the Secretary's Opinion Letter appears to be sound, there is insufficient information in the letter to evaluate the thoroughness of the consideration.  Further, because there were no earlier pronouncements regarding the issue of what constitutes the "operation" of a cafeteria, and there have been no later pronouncements on the issue, the consistency factor is not present.  This Court therefore declines to consider the Secretary's Opinion Letter in the instant Appeal.

Without considering the Opinion Letter, this Court cannot conclude that the arbitration panel's ruling that DFA services do not constitute the operation of a vending facility on federal property was "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law[.]" See 5
U.S.C. § 706(2)(A).

The original Contract between Ho`opono and the Army
was a prime contract for the operation of Schofield's dining
facilities, and that contract was in existence when the JWA was
passed, and therefore the Contract was subject to the no-
poaching provision of the JWA, Pub. L. No. 109-364, § 856, and
the JWOD did not apply to the Contract.  However, the 2016-22
Contract was solicitated as a new contract, not an extension of
the original Contract, and therefore the 2016-22 Contract was
not in existence when the JWA was passed.  Thus, the JWA no-
poaching provision did not apply to the solicitation process for
the 2016-22 Contract.  The arbitration panel, considering the
relationship between the RSA, the JWA, and the JWOD, concluded
that DFA services, although related to FFS duties, were
separable, and therefore the RSA's priority is not required in
the solicitation process for a DFA contract.  In so ruling, the
arbitration panel did not: "rel[y] on factors Congress did not
intend it to consider"; "entirely fail[] to consider an
important aspect of the problem"; nor "offer[] an explanation
that runs counter to the evidence before" it.  See Earth Island
Inst., 626 F.3d at 469 (citation and quotation marks omitted).
While the United States Department of Education, in its
expertise, could propose regulations defining the operation of a

22

vending facility on federal property to include the provision of
DFA services for the facility and could go through the formal
administrative process to adopt such regulations, it has not
done so.  There is a plausible difference in the view of the
existing statutes and regulations regarding the issue of whether
the provision of DFA services constitutes the operation of a
vending facility on federal property.  See id.  The arbitration
panel's ruling that the RSA did not apply to a contract for DFA
services at Schofield was not "arbitrary, capricious, an abuse
of discretion, or otherwise not in accordance with law[.]"
Hoopono's Appeal is therefore denied, and the arbitration
panel's Decision is affirmed, as to this issue.

## II.  Whether a Limitation Was Placed on the Operation of a Vending Facility

It is undisputed that departing from the scope of the
Contract, which required FFS duties, to requiring only DFA
duties in the 2016-22 Contract rendered Ho`opono ineligible to
bid.  The RSA states that: "**Any** limitation on the . . .
operation of a vending facility based on a finding that such
. . . operation would adversely affect the interests of the
United States shall be fully justified in writing to the
Secretary, who shall determine whether such limitation is
justified."  20 U.S.C. § 107(b) (emphasis added).  The
arbitration panel found that the Army narrowed the scope of the

contracted services because of the increased availability of Army cooks.  [AR (dkt. no. 69-1) at CAR001130 (Decision at 3).] Only a contract for DFA services was necessary "because Army Regulations prohibit Army cooks from performing those functions."  [Id.]  Defendant does not contest that this was the reason for the reduction in the scope of work.  See Answering Brief at 6-7 (discussing the return of Army cooks who had been deployed in Iraq and Afghanistan).  It is undisputed that, under the Contract, Ho`opono was operating vending facilities at Schofield.  The decision to reduce the scope of the contracted services because of the return of deployed cooks was essentially a decision that continuing to have a contractor perform those services "would adversely affect the interests of the United States."  See § 107(b).  Defendant's arguments in this Appeal present an analogous position - that it was in the Army's best interest to have the previously deployed cooks resume the food service duties at the Schofield facilities.  See Answering Brief at 6 ("the Army Soldiers/cooks who were **hired and trained by the Army for the specific purpose of operating the dining facilities** returned to their duty assignments from deployment and would perform their FFS functions" (emphasis added)).

Defendant's position is it was not necessary for the Army to seek a justification ruling from the Secretary before reducing the scope of the Schofield dining facilities contract

because the reduction did not constitute a "limitation" for purposes of § 107(b).  Defendant asserts § 107(b) "was never intended to compel an agency to renew contracts after they have expired," and "the [statute's] legislative history reveals that the provision was designed for a narrower purpose — preventing federal agencies from thwarting the RSA priority by imposing arbitrary restrictions on blind vendors' operations." [Answering Brief at 19 (citing S. Rep. No. 93-937, at 16 (1974) (citing concerns about agencies "imposing arbitrary and harmful limitations on blind vendor operations with respect to the kinds of merchandise a blind vendor was permitted to sell, with respect to the location of a blind stand, or with respect to the amount of income permitted to accrue to a vendor")).]

The RSA does not define "limitation."  The Ninth Circuit has stated:

> "When a statute does not define a term, we typically 'give the phrase its ordinary meaning.'" FCC v. AT & T Inc., 562 U.S. 397, 403, 131 S. Ct. 1177, 179 L. Ed. 2d 132 (2011) (quoting Johnson v. United States, 559 U.S. 133, 138, 130 S. Ct. 1265, 176 L. Ed. 2d 1 (2010)). To determine the ordinary meaning of a word, "consulting common dictionary definitions is the usual course." Cal. All. of Child & Family Servs. v. Allenby, 589 F.3d 1017, 1021 (9th Cir. 2009).  "If the language has a plain meaning or is unambiguous, the statutory interpretation inquiry ends there." CVS Health Corp. v. Vividus, LLC, 878 F.3d 703, 706 (9th Cir. 2017) (citation omitted).

Animal Legal Def. Fund v. U.S. Dep't of Agric., 933 F.3d 1088, 1093 (9th Cir. 2019).  A "limitation" is "something that limits," and a limit is "something that bounds, restrains, or confines."  Limitation, Merriam-Webster, https://www.merriam-webster.com/dictionary/limitation (last visited May 25, 2021); Limit, Merriam-Webster, https://www.merriam-webster.com/dictionary/limits (last visited May 25, 2021). Further, § 107(b) specifically refers to "**[a]ny** limitation," (emphasis added,) and the plain meaning of the term "any" indicates that "limitation" is to be interpreted broadly.  See Any, Merriam-Webster, https://www.merriam-webster.com/dictionary/any (last visited May 25, 2021) (stating "any" means "EVERY — used to indicate one selected without restriction" (emphasis in original)).

Changing the scope of the work contacted for the Schofield dining facilities from FFS duties to DFA duties, eliminating the RSA's priority, and soliciting the 2016-22 Contract as solely a 100% small business set-aside contract restrained or confined Ho`opono - the incumbent service provider under the Contract - from bidding on the 2016-22 Contract.  This is particularly true because the Army initially informed Ho`opono that the Army intended to apply the RSA's priority in the bidding process for the 2016-22 Contract, and the RSA's priority was not removed until Amendment 4 to the 2016-22

26

Solicitation.  See AR (dkt. no. 62-4) at CAR000139 (12/22/15

Letter); AR (dkt. no. 67-1) at CAR000917-32 (Amendment 4).  The

reduction of duties from FFS to DFA therefore constituted a

"limitation" for purposes of § 107(b).  Accord SourceAmerica,

826 F. App'x at 286 (4th Cir. 2020) ("the Army's decision to

forego the FFS contract with Kansas in favor of a DFA contract

did more than just 'limit' a blind vendor's operation of the

vending facility; it eliminated it altogether" (citation

omitted)).  Because the term "[a]ny limitation" has a plain and

unambiguous meaning, it is not necessary to proceed further in

the statutory interpretation analysis.[9]  See Animal Legal Def.

Fund, 933 F.3d at 1093.

---

[9] Even if this Court considered the legislative history
cited by Defendant, [Answering Brief at 19 (citing S. Rep.
No. 93-937, at 16 (1974)),] which reflects Congress's concern
regarding limitations on a licensed blind vender such as
restrictions on the type of merchandise sold, the location of
the vending operation, and the amount of income, it would not
change this Court's analysis.  Although those examples are cited
in the RSA's legislative history, nothing in the language of the
RSA statutes suggests that the term "limitation" means only
those types of restrictions.  Thus, the legislative history of
the RSA does not preclude this Court's interpretation of the
term "limitation."  Accord SourceAmerica, 826 F. App'x at 285-86
(4th Cir. 2020) (discussing the reduction of a FFS contract to a
new DFA contract and citing Minn. Dep't of Jobs & Training v.
Riley, 18 F.3d 606, 608 (8th Cir. 1994) (addressing the practice
of charging commission on the blind vendor's operation), and
Minn. Dep't of Econ. Sec. v. Riley, 107 F.3d 648, 650 (8th Cir.
1997) (addressing the installation of vending machines that
would compete with the blind vendor)).

This Court concludes that the arbitration panel's ruling that the § 107(b) justification review requirement did not apply in this case was arbitrary and capricious and was not in accordance with law.  The arbitration panel's analysis of this issue "runs counter to the evidence before" the panel and, based on the plain language of § 107(b), the panel's analysis was "so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  See Earth Island Inst., 626 F.3d at 469.  Hoopono's Appeal is therefore granted as to this issue, and this portion of the arbitration panel's Decision is vacated.

## III. **Effect of this Court's Ruling**

Because this Court has vacated a portion of the arbitration panel's Decision, judgment in this case will be entered in favor of Ho`opono.  In addition, Ho`opono requests the following relief:

> b)   vacate the Arbitration Decision;
>
> c)   order the Army to promptly comply with the Randolph-Sheppard Act in soliciting new bids for the services at issue;
>
> d)   order the Army to terminate the existing contract and immediately enter a bridge contract with Ho`opono for the services currently being provided in contradiction to the Act;
>
> e)   enjoin the Army from exercising options under the existing contract that would perpetuate its violation of the Act; and

28

> f)   enjoin the Army from further violations of
> the Act in bid solicitations for Schofield
> Barracks, including upon expiration of the
> current DFA contract at the facility.

[Opening Brief at 29.]  Defendant responds that these requests

for relief are not properly before this Court in the instant

Appeal, which presents the limited issue of whether the

arbitration panel's Decision should be set aside.  Defendant's

position is that Ho`opono is only entitled to a remand to the

arbitration panel.  [Answering Brief at 25-26 (citing Sauer v.

U.S. Dep't of Educ., 668 F.3d 644, 653 (9th Cir. 2012) (citing

Maryland State Dep't of Educ. v. U.S. Dep't of Veterans Affairs,

98 F.3d 165, 169-70 (4th Cir. 1996) ("[T]he statute places the

responsibility for ending the violation on the head of the

federal entity and does not authorize a [20 U.S.C.] § 107d-1(b)

arbitration panel to order the federal entity to take specific

remedial action.")))]

> In Sauer, the Ninth Circuit stated:

> [T]wo of our sister circuits have held that an
> arbitration panel convened under § 107d-1(b)
> lacks authority to order a federal agency to take
> remedial action; under this interpretation of the
> Act, a state licensing agency would not have the
> ability (let alone the obligation) to enforce a
> § 107d-1(b) arbitration decision against the
> federal government.

668 F.3d at 653 (citing Md. State Dep't of Educ. v. U.S. Dep't

of Veterans Affairs, 98 F.3d 165, 169-70 (4th Cir. 1996); Ga.

Dep't of Human Res. v. Nash, 915 F.2d 1482, 1492 (11th Cir.

1990)).   However, because the Ninth Circuit ultimately did not reach the issue of whether a SLA would be able to enforce an arbitration decision against a federal agency, id., it cannot be said that the Ninth Circuit in Sauer adopted the Fourth Circuit interpretation of § 107d-1(b) that Defendant quotes in the Answering Brief.

This Court nevertheless agrees with Defendant that the relief sought by Ho`opono cannot be issued against the Army here because the Army is not a party to the instant Appeal, although the Army was the respondent in the proceedings before the arbitration panel.  This Court therefore remands the instant case to the arbitration panel to issue a decision consistent with this Order.  See § 107d-1(b) ("the decision of [the arbitration] panel shall be final and binding on the parties except as otherwise provided in this chapter[,]" i.e. 20 U.S.C. Chapter 6A).

## CONCLUSION

For the foregoing reasons, Hoopono's appeal from the arbitration panel's July 24, 2017 Decision, filed August 28, 2017, is HEREBY GRANTED IN PART AND DENIED IN PART, and the Decision is HEREBY AFFIRMED IN PART AND VACATED IN PART.  The Appeal is GRANTED, insofar as: the arbitration panel's Decision is VACATED as to the panel's ruling that the Army was not required to comply with the § 107(b) review requirement in this

case; judgment in the instant Appeal will be entered in favor of Ho`opono; and the case is REMANDED to the arbitration panel to enter a decision consistent with this Order.  The Appeal is DENIED in all other respects.

There being no remaining issues in the instant Appeal, the Clerk's Office is DIRECTED to enter judgment in favor of Ho`opono, pursuant to this Order, and to close the case immediately.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 27, 2021.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

STATE OF HAWAII, DEPARTMENT OF HUMAN SERVICES, DIVISION OF VOCATIONAL REHABILITATION, HOOPONO – SERVICES FOR THE BLIND VS. U.S. DEPARTMENT OF EDUCATION, REHABILITATION SERVICES ADMINISTRATION; CV 17-00430 LEK-RT; ORDER:  GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPEAL; AFFIRMING IN PART AND REVERSING IN PART THE ARBITRATION PANEL'S JULY 24, 2017 DECISION; AND REMANDING THE CASE TO THE ARBITRATION PANEL